HART AND ALS.

*v.*

HAYNES AND ALS.

(*Special Court of Appeals of Virginia, February, 1877.*)

[Virginia Law Journal, 1877, p. 109.]

Written Contract to Convey Land—Judgments against Seller—Recordation—Case at Bar.

By a written contract between W. and G. executed on 30th January, 1866, W. sold to G. a tract of land, at which time G. paid part of the purchase money, and W. bound himself by the contract to make to G., upon payment of the balance of the purchase money, a deed for said land. The contract was duly executed and acknowledged, but never recorded. On May 21st, 1866, W. and wife conveyed said land to G. by deed with general warranty, which was acknowledged on that day, and duly recorded on the next. At the time of the execution of the deed G. owed a balance of $311.83 of the purchase money, with interest from January 1, 1866, for which he was requested by W. to execute his bond to S. instead of himself, which, with the assent of S., who was present, was accordingly done. On May 16th, 1866, during the term of the county court of Caroline, which began on the 14th of that month, H. and J. each recovered judgments against W., which were duly docketed on June 6, 1866. On February 11, 1861, A. recovered a judgment against W., which was docketed May 16, 1866. On May 29, 1866, at a term of the circuit court of Caroline, which began on that day, P. recovered a judgment against W., which was docketed July 2, 1866. Upon these facts it was *held* :

Same—Failure to Record—Judgments against Seller Docketed— Priority.

1. The contract of January 30, 1866, never having been recorded, as required by ch. 118, sec. 4, 5, 7 of the Code of 1860, was void as to the judgment creditors of W., whose judgments were duly docketed.

**Deed of Conveyance under Contract Recorded—Judgment—Priority.**

2. P.'s judgment having been recovered after the deed from W. and wife was made and recorded, constitutes no lien on the land.

**War and Stay Law—Time Excluded.**

3. Under the act of March 2, 1866, entitled "An act to preserve and extend the time for the exercise of certain civil rights and remedies" (which act confirms those of February 23, 1862, and March 14, 1862), in computing the time within which A. was required, by ch. 186, sec. 6, 8, of the Code of 1860, to docket his judgment in order to preserve the lien thereof, the period from April 17, 1861, to March 2, 1866, must be excluded.

**Same—Same—Recordation of Judgment—Case at Bar.**

4. The said period being excluded, A.'s judgment was duly docketed within less than a year next after its date. The said judgment and the judgments in favor of H. and J. having been recovered before the conveyance of May 21, 1866, and duly docketed as required by ch. 186, sec. 8, of the Code of 1860, constitute liens on the land in the hands of G., the purchaser.

**Judgments—Priority in Time of Recovery—Effect.**

5. As between the judgment of A. and the judgments of H. and J., the former being prior in point of time, is entitled to preference of satisfaction.

**Same—Exceed Value of Land—Case at Bar.**

Inasmuch as the said judgments constituting liens on the land exceed the value thereof, there is a total failure of consideration for the bond for $311.83; and inasmuch as S., under the circumstances of this case, stands in the shoes of W., G. is entitled to have the collection of said bond perpetually enjoined.

The case is sufficiently stated in the opinion of Judge Wingfield.

*Marye* and *Fitzhugh*, for appellants.

*Moncure, Holladay* and *White*, for appellees.

WINGFIELD, J., delivered the opinion of the court.

By a written contract between Ira E. White and George L. Haynes, executed on the 30th of January, 1866, White

sold to Haynes a tract of 223¾ acres of land in Caroline county, at the price of five dollars an acre, at which time Haynes paid him the sum of $794.67, part of the purchase money, and White bound himself by the contract to make to Haynes, upon the payment of the balance of the purchase money, "a good and sufficient deed for the said land when thereto required.". The contract was signed and sealed by both parties, and attested by two witnesses, and was afterwards, on the 11th of June, 1866, acknowledged by White before a justice of the peace, and regularly certified by the justice ; but the contract was never recorded.

On the 21st of May, 1866, White and wife, by deed of that date, conveyed the land to Haynes with general warranty ; and on the same day it was regularly acknowledged by White and wife before justices, and their acknowledgment duly certified ; on which it was, on the next day (the 22d), admitted to record in the clerk's office of Caroline county.

At the time of the execution of the deed, Haynes owed a balance of $311.83, of the purchase money, with interest from the 1st of January, 1866, for which he was requested by Ira E. White, to execute his bond to the appellee, Smith J. R. White, instead of himself (Ira E. White), which, with the assent of Smith J. R. White (who was present) he accordingly did.

On the 16th of May, 1866, during the term of the county court of Caroline, which commenced on the 14th of that month, the appellants recovered judgments against Ira E. White, which were regularly entered on the lien docket of that county on the 6th day of June, 1866. On the 11th of February, 1861, Robert G. Allen recovered a judgment against I. E. White, which was entered on the lien docket on the 16th of May, 1866 ; and on the 29th of May, 1866, at a term of the circuit court of Caroline, the appellee,

Dandridge Pitts, recovered a judgment against I. E. White, which was docketed on the 2d of July, 1866.

After the bond given to Smith J. R. White for the balance of the purchase money of the land fell due, he brought suit on it and obtained a judgment for its amount. And then the appellee, Haynes, exhibited his bill in the circuit court of Caroline county, setting forth the facts in relation to the purchase of the land and the recovery of the before-mentioned judgments against Ira E. White, and alleging that the said judgment creditors of Ira E. White, claim that their judgments are liens upon the land sold by him to the complainant ; and further averring that he is advised that if they are liens at all, they are only equitable liens and extend only to the unpaid purchase money due on the bond given to Smith J. R. White, which he professes a willingness to pay, and asks that the same may be appropriated to the proper parties, and that he may be quieted in his title to the land so purchased by him. The bill makes Smith J. R. White and the judgment creditors parties, and prays for an injunction against the judgment obtained by Smith J. R. White until the rights of all parties can be ascertained, determined and adjusted, which was granted.

The appellants, Hart, Hayes & Co., filed their answer whereby they insisted that their judgments were liens on the land in question, because the contract of the 30th of January, 1866, was void as to the creditors of Ira E. White for never having been recorded ; and the deed of conveyance was likewise inoperative and void as to them, as it was never made until after their judgments had been obtained ; and that in virtue of the provisions of § 6 and 8 of chap. 186, and the 4th, 5th and 7th sec. of chap. 118 of the Code, they are entitled to have the land in question subjected to the payment of their judgments ; and moreover, that they and Thomas L. Jones' representative (who ob-

tained judgment at the same time) are entitled to preference over the other judgment creditors—over Allen, because his judgment was in 1861, and was not docketed until 16th May, 1866, more than twelve months after its recovery and not ninety days before the conveyance to Haynes, therefore no lien on the land conveyed to him, as it is not alleged or shown that he (Haynes) had notice of its existence at the time the deed was made ; and over Pitts, because his judgment was after theirs, indeed after the deed, and therefore no lien at all.

Smith J. R. White also answered, admitting that the bond on which he had obtained judgment against Haynes was executed for the balance of the purchase money of the land ; but insists that it was given to pay a debt due from Ira E. White to him ; and that although the judgments of the appellants were liens upon the land, they are no liens on the bond given to him, and that he is not affected by any equity Haynes may have against Ira E. White, but is, in any event, entitled to collect the same as held by him on a valuable consideration from said Ira E. White.

And the cause coming on, on the bill, answers, replications and exhibits (the latter consisting of the contract, deed of conveyance and copies of the judgments against Ira E. White), the circuit court dissolved the injunction as to Smith J. R. White and decreed that Haynes should pay to him the amount of the judgment recovered on the bond given to him for the balance of the purchase money of the tract of land and costs ; and perpetually enjoined the appellants and the other judgment creditors of Ira E. White from proceeding to enforce their judgments against the land sold by him to Haynes. [Judge Wingfield, after reciting chap. 186, sec. 6 and 8, and chap. 118, sec. 4, 5, and 7 of the Code of 1860, proceeds :]

Under the statute of 1819, which provided "that all bar-

gains and sales and other conveyances whatsoever of any 'lands, whether made for passing any estate of inheritance,'' &c., should be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they should be proved and lodged with the clerk to be recorded according to the directions of the act—see 1 Revised Code, page 362—it was decided in the case of McClure v. Thistle's Ex'ors, 2 Gratt. 182, by a full court : That a house and lot in the city of Wheeling, sold and conveyed by David Agnew to McClure in 1835, and which he had fully paid for and been in possession of from the date of his deed and purchase (but which deed, although duly acknowledged and certified at the time of its date, was not recorded until May, 1842), was void as to the creditors of Agnew, who had obtained judgments subsequent to the purchase of the lot by McClure and before the recording of the deed. This decision would seem to be plainly in accordance with the letter and policy of the statute last cited, which was the existing law on the subject at the time it was made.

But in the case of Withers v. Carter and als., 4 Gratt. 407, decided by a court of three judges, which seems to me to be exactly similar in principle, and only differs in its details from the former in that the contract for the sale and purchase was in writing, and the purchaser (Carter) had only paid two-thirds of the price of the land bought by him from Triplett, and had, according to the terms of the contract, gotten a deed of conveyance, properly acknowledged and certified, which, however, was never recorded in consequence of its having been lost by the messenger by whom it was sent to the clerk's office to be recorded, a different rule seems to have been laid down. It is true that Judge Baldwin, in his opinion in the latter case, undertakes to distinguish it from ''McClure v. Thistle,'' upon the ground that there was a pre-existing executory contract for the sale of the land by Triplett to Carter at the time the deed was made, and

that the statute only made the deed void and did not affect the previous existing contract (which he assumes was not the case in ''McClure v. Thistle's Ex'ors''); and that as Carter had fully paid so much of the purchase money as entitled him, under the contract, to a deed of conveyance, and had been put into possession, he had a complete equitable title to the same, which a court of chancery would have executed ; and which, therefore, protected it against the creditors who obtained judgments after the sale. The distinction attempted to be made between the two cases is based upon the argument that there was a preceding executory contract by which Triplett was bound to convey the land to Carter, which was a still existing contract (notwithstanding the execution of the deed of conveyance) ; and as the statute then in force did not require such a contract to be recorded, but merely permitted it, and when it was done, gave it the effect of a deed and notice as to creditors and purchasers, and did not avoid it if not recorded ; and although the deed of conveyance to Carter was rendered void by the statute as to the creditors of Triplett, yet it did not affect Carter's previous equitable estate, and he was entitled to have his equitable title and estate protected and enforced against them in a court of equity. While in ''McClure v. Thistle's Ex'ors,'' it did not appear there was any preceding executory contract, but that the payment, delivery of possession and deed of conveyance were all at the same time, for anything that appeared in the case. It seems to me that there is, of necessity, obliged to be a verbal agreement preceding every written contract. How is there ever to be a written contract unless the parties beforehand agree upon its terms ? It is true, that such a contract in relation to the sale of land would be void under the statute of frauds, unless it had been so far performed by one of the parties as to entitle him to have a specific performance in equity ; but when it has been so far performed by the purchaser as to entitle him, in a

court of equity, to compel the vendor to convey the legal
title, he has as good and complete an equitable title as if he
stood upon a written executory contract. For instance :
when McClure paid his money and was put in possession
under the verbal contract between him and Agnew, both of
which must have preceded the deed, he had a good equita-
ble title, and might have compelled Agnew to convey the
legal title if he had refused so to do, and would have had
the same right so to do, and no more, as if there had been
a previous written executory contract. So in the other
case, when Carter had so far performed the contract be-
tween him and Triplett as by its terms to entitle him to a
conveyance, he had a good equitable title (but no better
than McClure's), and might have compelled Triplett to con-
vey the legal title if he had refused. But the executory
contract in each case had been complied with by a convey-
ance of the legal title which, in each case, was void as to
creditors of the vendor for want of recordation. Now if
in the one case Carter was remitted to his previous equita-
ble title because his deed was void at law, I cannot see why,
when McClure's deed was, for the same reason, void at law,
he should not also have been remitted to his previous equi-
table title. But I would think that the execution of the
deed in either case satisfied and discharged the contract to
convey, and that it was no longer executory or in existence,
but was extinguished and merged in the deed of conveyance,
and that the province of a court of equity, in the case of
Carter, would be to set up the lost deed, and not to require
the vendor to re-execute the previous executory contract
which had already been executed, satisfied and discharged
by the deed of conveyance.

I do not think that the English cases cited by Judge Bald-
win to show that defective legal titles have been upheld in
equity against subsequent judgment creditors, can have much
weight as authority in construing our statutes in relation to

recording deeds, &c., because, at the time those cases were decided, there was no such statute in England requiring deeds to be recorded as ours. It always seemed to me that the decision in "Withers v. Carter" could not stand with that in "McClure v. Thistle's Ex'ors," or with the letter and spirit of the statute.

I think it cannot be fairly inferred that the legislature, when it declared that an unrecorded deed should be void as to creditors and purchasers without notice, meant that the party might go behind that and set up an unrecorded executory contract on which the deed was founded, and in that way defeat the very object of the statute. For what good purpose, should the deed (the highest evidence of title) be held void, if behind that, there may be an equitable title resting upon an unrecorded executory contract on which the deed is founded, to the whole beneficial interest which may be protected against the creditors as to whom the deed is void.

But there is no need to quarrel with "Withers v. Carter" now, and whether it can be distinguished from "McClure v. Thistle," is not now a question of any great interest or importance, because by the 4th and 5th sections of chap. 118 of the Code of 1849, all written contracts in relation to land, are put upon the same footing of deeds, and are declared void as to creditors and purchasers without notice, unless recorded.

The manifest policy of our legislature, for a number of years, has been to avoid all secret contracts and liens in relation to real estate, and to prevent them from being set up against creditors who have given credit to the ostensible owner (who had the legal title) on the faith of his being the actual owner. The obvious policy of the legislature at the revisal of 1849, was to require that all titles to, and all liens upon real estate, should appear of record, and to make all

such as did not so appear, void as to creditors and purchasers without notice ; and to this end the old rule in relation to *lis pendens* and the vendor's equitable lien, were abolished ; and to be effectual now, they, as well as all contracts in relation to land and all judgment liens, are required to appear of record, otherwise they are made void as to creditors and purchasers without notice.

So it seems that if the doctrine of "Withers v. Carter" ever was good law, it has not been so since the Code of 1849 went into effect.

Yet it would seem that in rendering the decree appealed from in this case, the circuit court must have followed the rule in "Withers v. Carter" without adverting to the fact that the law has been so changed since it was made, as in express terms to make the executory contract void unless recorded in like manner as the deed of conveyance. I can see no other ground upon which the decree could be based unless, indeed, it was intended to carry the principles of that case still farther, and to set up the verbal contract after both the written executory contract and the deed were set aside, because the two last were void as to creditors and purchasers for the failure to record them in due time. To suppose that the legislature, after having made void all written unrecorded contracts in relation to land, intended that its whole policy in this respect might be frustrated and subverted by allowing a party to set up a verbal agreement which was forbidden and declared void by the statute of frauds, would be to attribute to it the most egregious folly and absurdity. It is true, that courts of equity sometimes enforce the execution of such contracts between the parties themselves when they have been so far executed by one party that it would amount to fraud in the other not to execute it on his part ; the same thing, however, would be held between the parties to an unrecorded written contract ;

in either case a court of equity would hold the contract good as between the parties. But it never could have been intended to put a party claiming, under such a right, in a better condition than if he had a written contract or deed of conveyance. The purchaser under a written contract would undoubtedly have as clear a right to apply to a court of equity to enforce it against the vendor as a party claiming under a parol contract and part performance ; yet his equitable title could not be protected against a creditor, unless his contract was recorded. And I cannot think that one claiming under a parol contract partly performed and void at law under the statute of frauds, can be placed in a better condition. That such a right would not avail against creditors, was, in effect, held even in the case of "Withers v. Carter," when it affirmed (as it did) that "McClure v. Thistle's Ex'ors," was correctly decided. But, as before said, the letter and policy of the statute requires every one claiming a right to real estate to show his right by the record of the county where it is, in order to protect it against the creditors of the vendor. There is no hardship in this, as the statute allows the vendor sixty days within which to record his contract ; and if a purchaser will obstinately disregard the requirement of the law, he must take the consequences of his own folly and neglect, and abide the loss—a thing that happens in numberless other instances.

To hold that an equitable title resting upon a parol contract partly performed could be set up against creditors would tend not only to defeat the letter and spirit of the statute, but would have a very pernicious and evil tendency in itself, and open a wide door to frauds and perjuries. The remedy allowed the creditor against the lands of the debtor, by the law, is of much more importance and much more frequently resorted to now, than it formerly was—and if the doctrine should be established that such an equitable title can be set up against a creditor, when one under

an unrecorded written contract can not, what is to prevent a fraudulent combination between the debtor and a pretended purchaser from defeating the creditor in every instance? They will have nothing to do but for the one to pretend to have sold and the other to have purchased and paid for the land before the judgment was recovered—no one may know anything of the supposed purchase but themselves. They, under the law as it now stands, will be, competent witnesses; and they may, and in most instances will be the sole witnesses to prove the supposed sale and purchase, and there can be none to contradict them, and thus every creditor may be defeated and defrauded. This, I think, shows the wisdom of the statute, and the propriety of adhering to its letter and spirit.

I think the circuit court was wrong in rejecting the appellants' judgment liens on the land in question; and in dissolving the injunction as to Smith J. R. White. The land being subject to the judgment liens (which amounted to more than the bond) there was a total failure of the consideration of the bond given to Smith J. R. White. Haynes did not undertake to pay to him for Ira E. White a debt previously due to him from Ira E. (as alleged in S. J. R. White's answer), but undertook to pay his (Haynes), own debt which he owed for the balance of the purchase of the land, and all parties being present, it was agreed that Smith J. R. White should be substituted as obligee instead of Ira. E. White, and this was done at the request of the two latter. Under these circumstances Haynes is entitled, I think, to every equitable defense against the bond in the hands of Smith J. R. White, that he would have had against it if it had been made payable directly to Ira E. White; he (S. J. R. White) can stand in no better condition than if he had been the assignee of Ira E. White. I think, therefore, the injunction ought to have been perpetuated as to Smith J. R. White.

[Judge Wingfield then proceeds to show that the judgment

in favor of Allen is a valid lien and entitled to priority over the other judgments, upon the ground stated in headnote No. 3 : His conclusion on this point has since been affirmed by the court of appeals in Hill v. Rixey & Starke, 26 Gratt. 72.]

I am of opinion to reverse the decree and remand the cause back to the circuit court with directions to cause the bill to be amended so as to make Ira E. White a party, in order to give him an opportunity to show, if he can, that the judgments or any part of them have been paid or otherwise discharged ; and in order that Haynes may have a decree over against him for the money he has paid in the case the land is charged with the payment of the judgment liens ; and unless it shall be shown that the judgments have been satisfied, to direct a sale of the land, to be applied first to the payment of Allen's judgment, ratably to the judgments of the appellants if it should not sell for a sum sufficient to pay them all, and to perpetuate the injunction as to the judgment recovered by Smith J. R. White against Haynes.

Barton, J.   I concur as to the decree to be entered and in the reasoning in the opinion just delivered, so far as it is necessary to the decision of this case.

I do not consider the correctness of the decision of Withers v. Carter, 4 Gratt. or the effect of a parol contract partly performed as involved in the decision of this case.

McLaughlin, J.   I concur with the president of the court in most of his reasoning, in his conclusions and in the decree, but I do not concur in his criticism upon the case of Withers v. Carter.   That was a case arising before the Code of 1849, and I do not deem it necessary to a proper decision of this case to pass upon the correctness of that decision.

---

NOTE.

The decision in the principal case re-affirms the principles settled by McClure v. Thistle's Executors, 2 Gratt. 182, but does not nec-

essarily trench upon the doctrine of Withers *v.* Carter, 4 Gratt. 407; but inasmuch as the latter case has been much criticised, we have thought a short review of those cases would not be inappropriate in this connection.

It is impossible to tell from the report of McClure *v.* Thistle's Executors, what were the precise facts of that case. But they appear in the subsequent case of Withers *v.* Carter, in the opinion of Judge Baldwin, which was concurred in by Cabell, P., and Allen, J., all three of which judges sat in the case of McClure *v.* Thistle's Executors; and the accuracy of Judge Baldwin's statement is rather supported (if it needs support) by the reporter's syllabus and statement in McClure *v.* Thistle's Executors. In that case (as far as the record showed) there was no executory contract or possession prior to the deed. The vendee relied solely upon his deed, his possession under it, and his payment of the purchase money. There were no such circumstances, apart from the deed, as would confer an equitable title. Possession was taken and held, and title set up and claimed, under the deed alone. Of course there was, as in the nature of things there must always be, a verbal negotiation and understanding more or less prior in point of time to the execution of the deed; but that oral agreement was not disconnected from the deed, but formed a part of the same transaction, and, in legal sense, was contemporaneous therewith. No one supposes that under such circumstances the oral agreement could be made the foundation of an equitable title, by reason of the subsequent admission of the vendee into possession; for that possession was not referrible to the oral argeement (which circumstance would be essential to give rise to the equitable title by the doctrines of the court of equity) but was under and in pursuance of the deed alone. In McClure *v.* Thistle's Executors, the vendee never had less than the full legal title; he never had an equitable title. The oral agreement alone could not have vested in him such equitable title, or any title at all—and the subsequent possession could not have the effect to give rise to it; for that possession was taken not under the oral agreement, but under the deed. Never having had anything but the legal title, and that being void for failure to record the deed, there was no equitable title to fall back upon; all the title the vendee ever had failed, and the judgment's creditors were held to be entitled. In that case there was no room for the doctrine of merger; it was not decided upon the ground that the equitable was merged in the legal title, but on the ground that there was not, and never had been, an equitable title in the vendee. In the subsequent case of Withers *v.* Carter, there was an executory contract whereby the vendee acquired the equitable title. This contract was not required to be recorded as the

law then stood. Long afterwards a deed was made, which was lost and never recorded. In Withers *v.* Carter it was probably not seriously disputed (or if it was, it was put beyond all dispute by Judge Baldwin) that the executory contract needed no recordation, and that it conferred a good equitable title which, until the vendee received the deed conveying the legal title, was exempt from intervening liens on the land against the vendor; but the main contention was, that after the deed was made, the prior equitable title merged in the legal title, and the vendee would not afterwards be protected against liens subsequently acquired against the vendor, unless the deed was duly recorded. But the court of three judges was unanimously of opinion that the deed, although good as between the parties, and as between them passing the legal title, was as to creditors, &c., under the statute, until recorded, a mere nullity, a blank piece of paper, and so far void that quoad them it would not vest the legal title in the vendee so as to merge his equitable title; but that by the express terms of the statute the subject would be left ''in precisely the same situation as if no deed had ever been made or attempted.'' In controversies with creditors, the vendee was in the same position as if the deed had never been made. Quoad them, the vendee never had more than the equitable title; the deed conveying the legal title was as to them so absolutely void before recordation, that the grantee was never clothed with the legal title; and never having acquired as to them the legal title, the equitable title could not merge in it. This reasoning gives a broader effect to the voidness denounced by the statute against a failure to record, than we would have supposed at the first blush it would sustain. The statute was aimed at secret conveyances, and was intended to render them inoperative against creditors and purchasers for want of notice unless recorded—but they are good between the parties and effectual to convey the legal title, and to merge any prior equitable title. The statute was not intended to prevent this change being effected in the nature of the title, but to prevent that title, unless the deed evidencing it was recorded, from being set up against creditors and purchasers for value and without notice. But while this was the main intent, the language used in the statute is so broad and absolute, that, though the reasoning of Withers *v.* Carter on this point is still not entirely satisfactory to our mind, we do not see how the conclusion reached by the court in that case can be successfully controverted.

The only cases which can now fall under the influence of Withers *v.* Carter, are those where there has been a verbal contract attended with circumstances of part performance. We will premise, that it is now well settled that, except perhaps in a few excep-

tional cases, nothing short of a delivery of possession will confer the equitable title, and entitle the vendee to specific execution. Lester *v.* Foxcroft, Lead. Cas. in Eq., vol. 1, pt. 2 (4 Amer. Ed.). In such cases the vendee acquires an equitable title (as much now as before the recording acts,) which the court of equity will recognize, protect and enforce. The necessity of recordation arises from the statute. The recording act does not embrace such oral contracts nor require their recordation; whereof they are insusceptible from their very nature. To uphold the validity of such titles, prior to the conveyance of the legal title, is certainly not contrary to the letter of the recording acts; nor, as it seems to us, to their spirit. In order to acquire the equitable title under such oral contract, it is necessary that the vendee should be put in possession. This circumstance gives notice to the world, or at least suffices to put all persons on inquiry. It is an open and notorious fact, not secret like a deed or a written contract, which may be pocketed, and the world never know of the change of title. This necessity of putting the vendee in possession will also prevent the danger of collusive and pretended sales, which is deprecated by Judge Wingfield. The recording act makes a distinction which is founded upon this very principle in the case of chattels; for a mortgage thereof must be recorded; but a bill of sale (where generally there must be a transfer of possession) need not be. Of course there is an obvious difference between chattels and lands— possession being, in a much greater degree, the badge of ownership with the former; but still the illustration has some application. But, however that may be, where there is no deed or contract which can be recorded, such a case cannot be embraced, in any sense, within the recording act; and if the circumstances are such as to confer an equitable title, it results as a necessary consequence that that title will be protected in equity, inasmuch as it cannot be affected by a failure to comply with a statute with whose requisitions compliance is not only not required, but is impossible. And, to the question, whether it could have been intended that such a verbal contract, accompanied by circumstances of part performance, should stand upon a better footing than the deed conveying the full legal title, or the written contract, we answer, no, if the deed, or contract, is recorded pursuant to the statute, full opportunity for which is given; but yes, if they are not so recorded; such intention could not only have been entertained, but, in our judgment, has in effect been declared.

So far we have discussed the parol agreement, partly performed, in the absence of any subsequent deed; such deed when made would bring the case directly under the influence of Withers *v.* Carter. The effect of that decision has been already considered.

The decision in that case was certainly productive of results inherently just. But even if such was not its operation, it seems to us, that it would be inconsistent with the salutary doctrine of *stare decisis*, to disturb such a decision, which has probably been relied on and followed as establishing a rule of property. We by no means favor a servile adherence to the doctrine of *stare decisis*, as commonly understood. The supreme court of California has well said: ''There are cases, undoubtedly, which the courts would be fully justified in overruling, and which often are overruled; cases hastily and clearly erroneously decided, under which no valuable rights could grow up, and the overruling of which could produce no inconvenience; recent cases, under which valuable rights have not yet been acquired, which stand alone or nearly alone, and which are manifestly erroneous, and are themselves departures from the law as before well settled; and others not necessary to mention; many, if not most, of these may be said, in a certain sense, to be overruled upon the very doctrine of *stare decisis*.'' Hihn *v*. Courtis, 31 Cal. 400. But ''when a rule, by which the title to real property is to be determined, has become established by deliberate judicial decision, its inherent correctness or incorrectness, its justice or injustice, in the abstract, are of far less importance than that it should, itself, be constant and invariable. The court would not disturb such a rule of property, even though satisfied they could substitute another, preferable in theory, or better calculated by its operation to promote the purposes of justice.'' Smith *v*. McDonald, 42 Cal. 488—see Fearne Cont. Rem. (1794) p. 264, ¿ 134; Broom's Leg. Max. 147; Townsend's Ram's Legal Judgment 196–255,413. The application of these principles is specially forcible, where the question involved in the decision is the construction of a statute, as in such cases it is in the power of the Legislature, if their intention has been misconstrued, to remedy the evil by altering the law.—Ed.