Staples, J.
The appellees, Rixey & Starke, recovered judgments to a considerable amount against. Williamson C. George, at the November term 1860, of the County court of Culpeper. These judgments were docketed on the 11th December 1868. Other creditors obtained judgments against the same debtor, some of' which were recovered during the war, and others after its termination. These latter were, however, not docketed until 1865 and 1866.
On the 21st November 1865 the same Williamson C. George executed a deed of trust upon his real estate to secure the payment of certain debts therein enumerated. This deed was delivered to the clerk of the county on the 8th December 1865, but the stamp tax and registration fees not being paid, it was not recorded until the 6th November 1867.
The controversy in this case is between these judgment creditors on the one hand, and the trust creditors, on the other, the latter claiming as purchasers under the deed of trust just referred to. The question is one of priority of lien, to be decided almost exclusively by the provisions of our own statutes.
It is conceded that as against a purchaser for valuable consideration without notice, no judgment operates as a lien upon real estate unless it is docketed within a year from its date, or ninety days before a conveyance to such purchaser. Code of 1860, § 8, chap. 186.
It is insisted, however, that the acts of March 2d, 1866, and the several acts amendatory thereof, save to creditors the benefit of their liens during the period *75 these acts were in force, although the judgments were not docketed in conformity with the provisions of the statute. One of these acts is entitled “an act to preserve and extend the time for the exercise of certain civil rights and remedies.” Acts of 1865-’6, page 191. The first section of this act is very comprehensive in its terms. It declares that the period between the 17th April 1861, and the 2d March 1866, shall be excluded from the computation of the time within which by the terms of any statute or rule of law it may be necessary to commence any action or other proceeding, or to do any other act to preserve or prevent the loss of any civil right or remedy, or to avoid any fine, penalty or forfeiture.”
How it is very clear that “docketing a judgment” is “an act tobe done.” By the provisions of the 8th section, chapter 186, Code of 1860, already cited, it is to be done within twelve months from the date of the judgment, or ninety days before a conveyance. That it is directly within the saving of the first section of the act of March 2d, 1866, above quoted, does not, I think, admit of a question. The proposition is too plain for argument. My opinion therefore is, that the period between the 17th April 1861, and the 2d March 1866, is to be excluded wholly from the computation in determining whether the judgment was docketed in sufficient time to preserve the lien. It was so decided by the special Court of Appeals in the ease of Hart et als. v. Haynes.
The learned counsel for the appellees, as I understand, does not deny that this is the effect of the first section of the act of March 2d, 1866; but he insists-that as the judgment liens were lost under existing laws by the failure of the creditors to docket their judgments, the liens could not be restored by subsequent *76 legislation as against bona fide purchasers. In other words, the legislature could not by a retrospective statute divest rights acquired under previous laws.
The act of March 2d, 1866, is, however, a mere repetition or reenactment of the provisions contained in the acts of March 14th, 1862, and of February 23d, 1864. All these act3 embrace a period either of actual war, or the subsequent disorganization of the courts consequent thereon. That it is competent for the legislature to piass remedial statutes of a retrospective character, applicable to such a state of society, can be maintained both upon reason and upon authority. The necessity and validity of such legislation have been recognized by all governments and in all countries which have been the theatre of great civil conflicts. Statutes of this sort merely afford remedies for evils originating in the disorganization of society, when the laws are supposed to be silent, and the courts are closed against the assertion of civil rights.
It is however unnecessary now to discuss the constitutionality of the act of March 2d, 1866, and other acts of a kindred character. Their validity has been fully sustained by this court in Strother et als. v. Hull, 23 Gratt. 652; Sexton v. Crocket als., Id. 857. The question must be considered as settled in this state.
As already stated, the judgments recovered by Rixey & Starke were not docketed until the 11th December 1868. It is very clear that the act just adverted to is not sufficient to preserve the lien of these judgments. That act was wholly retrospective in its operation, and did not extend beyond the 2d March 1866. The question is, whether the lien is preserved by any other ■statute. It is insisted that they are within the spirit, if not the letter, of the act of March 2d, 1866, known as the stay law. This act is entitled “an act to stay the *77 collection of debts for a limited period.” Although the title cannot be relied on to restrain or control the positive provisions of a statute, yet when the meanig is at all doubtful the title may be looked to to aid in the interpretation. Here the title plainly indicates that the object of the statute was merely to restrain the collection of debts during the period of its operation. The preamble plainly indicates the same restricted purpose.
It states with some minuteness of detail, the great pecuniary distress inflicted upon the state by the disastrous results of the war, in the destruction of property and currency, in the want of means, efficient labor, and implements for agricultural purposes, and the strong appeal made by this condition of things to the legislature to interpose and prevent the ruinous results that would inevitably follow from forced sales of property. It was therefore enacted that no executions should issue, and no sales be made under judgments, deeds of trust or mortgages, whilst the act was in operation. This language plainly shows, what indeed is manifest throughout the act, that the intention was a mere suspension of the legal rights and remedies of creditors for a limited pei’iod. The legislation was not curative, but preventive in its character. Inasmuch, however, as the creditor was thus deprived of the ordinary legal remedies for the collection of his debt, it was but just and reasonable that he should be also relieved of the duty of instituting any proceeding to prevent the operation of the statute of limitation. As he could issue no execution, he ought not to be required to bring any suit. The seventh section was therefore inserted, which declares : “ The period during which this act shall remain in force shall be excluded from the computation of the time within which, by the operation of any statute or rule of law, it may be necessary to commence any proceed *78 ing to preserve or prevent the loss of any right or n ,, remedy.”
It will be borne in mind that the other act of March 2d, 1866, first mentioned, known as “the act to extend the time for the exercise of certain civil rights and remedies,” excludes from the computation the time “for doing any act” required by any statute or rule of law. Those words, “ the doing any act,” it will be observed, are omitted in the seveuth section of the stay law, just cited, and the words “to commence any proceeding” are alone retained. This change or difference of phraseology in the two acts passed on the same day, and relating somewhat to the same subject matter, very plainly indicates a difference of legislative purpose, a clear design that the one statute should not be as broad and comprehensive as the other.
The docketing a judgment is in no just sense of the term “the commencement of a proceeding.” The recordation of a deed might, with equal propriety, be so considered. If the creditor was to be excused from docketing his judgment, merely because he could take no steps to enforce it, the same indulgence was due to the mortgagee or trust creditor, who was similarly situated. Every reason or consideration of public policy which applies to one equally applies to the other.
A few moments reflection will satisfy us that the legislature could not have committed so grave an error as to dispense with the docketing of judgments during the long period the stay law might continue in force. The existence of that law was of uncertain duration. It was impossible to say howlqngthe necessities or the temper of the people might require its continuance. While indulgence was necessary to the debtor, it was equally important to him to provide for the discharge •of his constantly accruing liabilities. The personal *79 property being to a great extent destroyed, this could only be done by an advantageous sale of his real estate. But who would buy property encumbered with secret liens of unknown amount and number, which might be enforced after the lapse of years to the utter ruin of the purchaser.
The law requiring judgments to be docketed is an enactment of great public utility, founded upon the same considerations of public policy as the laws requiring the recordation of deeds, title bonds and marriage contracts. By discountenancing secret trusts and liens they encourage the sale of property, and protect the rights of innocent purchasers. The very fact that the judgment could not be enforced was an additional reason for requiring it to be docketed. The creditor might justly claim that the indulgence granted the debtor should not impair his legal rights and remedies; but he could not justly claim that this indulgence should also release him (the creditor) from a compliance with the laws intended for the protection of third persons. The object of the seventh section was to prevent the bar of the statute in favor of the debtor, but not to relieve the creditor of the duty he owed to innocent purchasers. In this view I am sustained by the opinion of Judge Bouldin in Sexton v. Crockett, 23 Gratt. 862.
In reference to the stay law he says: “Its"purpose was to prevent the sacrifice of property of the citizen by sales under execution in the impoverished condition of our people, and to save them from the expense of law suits as far as practicable by discouraging litigation. But as indulgence to the debtor might become hazardous to the interests of the creditor by exposing his claim to the bar of limitation, it became necessary to make some provision by which indulgence might be *80 extended with safety to the creditor, and, to effect this,, the seventh section was enacted.” Judge Anderson concurred in Judge Bouldin’s opinion throughout. Judges Moncure and Christian dissented from so much of it as held that the seventh section of the stay law applied to appeals; but they did not dissent from the observations which I have quoted. They may therefore be regarded as the views of the four judges who-sat in that case. ■
For these reasons I think the judgments recovered by Eixey & Starke do not constitute valid liens as-against the creditors claiming under the deed of trust. Under the decisions of this court these creditors must be held to be purchasers, entitled to all the rights and remedies accorded to persons of that class. Exchange Bank v. Knox, 19 Graft. 739.
It is true that the deed of trust was not recorded until 6th November 1867; but in the interval between its date and recordation no new rights attached, no additional liens were created upon the property in controversy. It was certainly a valid deed, from the date of its registration. The lien acquired under it must have precedence of the judgments of Eixey & Starke, which were not docketed until more than a year thereafter.
The other judgments were rendered and docketed before the deed of trust was admitted to record on the 6th November 1867. It is said, however, that the deed must be considered as recorded from the day of its delivery to the clerk. This was the 8th December 1865. But as the proper revenue stamps were not then affixed, nor the tax and registration fees then paid, the clerk was under no obligation to record the deed. All the cases which hold that the instrument is to be regarded as actually recorded from the time of delivery to the *81 clerk, proceed upon the idea, that the party has done all that is incumbent upon him to do, and nothing remains to be done as a prerequisite to the recordation. This, of course, cannot be predicated of a conveyance which is deposited in the office without pre-payment of the necessary fees and charges imposed by authority of the government.
It is further insisted that the recordation of the trust deed was entirely unnecessary, because the judgment creditors do not occupy the position of purchasers for valuable consideration without notice. The language of the statute is however very emphatic, that a deed of trust or mortgage is utterly void as to creditors unless recorded, whether they have or have not notice. The purchaser, or rather the creditor, claiming as a purchaser, under the trust deed, can only acquire title against the lien of the judgment by the recordation of the conveyance. According to this view, all the judgments, except those of Rixey & Starke, have priority over the deed of trust. They were either docketed within twelve months after their rendition, or they are within the influence of the act of March 2d, 1866, first mentioned, “to preserve and extend the time for the exercise of certain civil rights and remedies.55
It is objected to this view, that it in effect gives to subsequent judgments precedence of those prior in date; whereas as between creditors the judgments take effect in the order of time, whether docketed or not.
This is true, but it is because the registration laws so provided. A judgment creditor may lose his lien as against a purchaser by a failure to docket, and a subsequent creditor to him may preserve his judgment lien against the same purchaser by a prompt compliance with the statute. In such case the purchaser takes precedence of the prior though not of the subse *82 quent judgment. This is the necessary result of the preference given to him who is most vigilant in the exercise of his rights. The books are full of familiar illustrations of the rule.
For these reasons I am of opinion the decree of the Circuit court should be reversed, and the cause remanded to be proceeded with in conformity with the ■views herein expressed.
The other judges concurred in the opinion of Staples, J.
Decree reversed.