Burks, J.,
delivered the opinion-of the court.
In November 1860, the appellee, Thomas B. Nalle, recovered a judgment in the county court of Culpeper against William B. Ross and James A. Beckham, his surety, and caused the same to be docketed in said county court on the 3rd day of November, 1865. At the date of the judgment, Beckham was seized of several tracts of land in the county of Culpeper, which he conveyed to John Minor Botts and Franklin *425 Stearns by deed dated the 10th day of December, 1862, and admitted to record in the clerk’s office of said county court on the 11th day of December, 1862.
Between the date of the judgment and the docketing thereof, John C. Thom and William A. Thom, as the executors of Lucy Lewis Taylor, by deed conveyed to the said William B. Ross, a tract of laud in said ■county called “Berry Hill,” which by the will of their testatrix they were empowered to sell; and Ross and wife thereupon conveyed the same to the appellant Peter B. Borst; both of which deeds were afterwards admitted to record in the county court aforesaid.
Halle filed his original bill in the circuit court of Culpeper against Ross, Stearns, and the heirs of John Minor Botts (the latter being dead), to subject to the lien of his judgment the lands conveyed as aforesaid' by Beckham to Botts and Stearns, alleging in the bill, among other things, that Ross was insolvent. ■Some of the heirs of Botts answered the bill; and •denying that the judgment of the complainant constituted any lien on the lands purchased of Beckham, and averring that the “Berry Hill” estate conveyed by Ross to Borst, if there was any lien at all, was first •liable to the satisfaction of the judgment, prayed that the complainant might be required to proceed against that estate, “ as the lands of the principal debtor, and as the lands last aliened.”
Thereupon, Halle filed his amended and supplemental bill against the parties defendant to the original bill (except Ross who had died), and against the personal representative and heirs of Ross-, the heirs of Beckham and against Borst, seeking to subject to the ■satisfaction of his judgment the “Berry Hill” tract of land owned by Borst, and charging that it was primarily liable for the payment of said judgment.
*426 Borst answered the bill, denying that the judgment was any lien on the “Berry Hill” tract; first, because, as he averred, the judgment was not docketed within-the time prescribed by law; and second, because, as-he further averred, Ross was never so seized of said land as to make it subject to the lien of the judgment. As to this second ground of objection, he stated in substance, that the executors of Mts. Taylor were empowered by the will of their testatrix to make sale of her real estate, of which “Berry Hill” was a part; that they employed the said William B. Ross as their agent to make sale of “Berry Hill” at a price of not less than $135,000 in Confederate currency; that Ross,, as such agent, did make the sale to him (Borst); that he (Borst) paid the purchase money to one of the executors, and after the payment was completed, that a deed of conveyance of the land from the executors to-Ross, which had been theretofore prepared, signed and acknowledged, was then delivered to Ross, and at the same time a deed of conveyance of the same land from Ross was delivered to him (Borst)—the delivery of the two deeds being contemporaneous acts—and both deeds were admitted to record at the same time;, and that in the whole transaction, Ross asserted no-claim to the land, acted merely as the agent of the executors, and never in fact at any time had any beneficial interest whatever in the land.
These statements of the answer were fully proved-by the deposition of John C. Thom (one of the executors of Mrs. Taylor, and a grantor in the deed to Ross), and Borst gave his own deposition to the same effect. Ho other depositions were taken in the case. Exceptions were filed to the depositions on the ground of' the alleged incompeteney of the witnesses, and the il~ *427 legality of parol evidence to establish the facts sought to be proved thereby.
At the hearing of the cause, the court sustained the ' exceptions taken to the incompetency of the witnesses, held the laud of Borst to be primarily, and the land of Botts and Stearns to be secondarily liable to the lien of the complainant’s judgment, and ordered an account to be taken of the fee simple and annual value of Borst’s land and of the liens thereon, including the lien of the complainant’s judgment. From this decree, an appeal was applied for by Borst, and allowed by one of the judges of this court.
It is objected, in the first place, by the appellant Borst, that even if Ross were the beneficial owner of the “Berry Hill” tract of land at the time he conveyed it to the appellant, still it was not bound by the judgment, because it was not docketed before the conveyance to him and within the time prescribed by law. The same objection is urged by the appellees owning the land purchased of Beckham.
This objection, we had supposed, was fully answered by the decision in Hill v. Rixey & als., 26 Gratt. 72, made by this court since an appeal was allowed in this case.
Notwithstanding that decision, however, learned counsel still insist, that the docketing of a judgment under § 8, ch. 186, Code of 1860, is not within the operation of the act passed March 14, 1862, entitled “ an act. to extend the time for the exercise of certain civil rights and remedies(acts of 1861-62,. ch. 81, p. 99) or of the act with the 'like title passed March 2, 1866, (acts of 1865-66, p, 191, Oode of 1878,, ch. 146, §§ 6, 7, pp. 998-99): that the docketing of a judgment as required by the Code is not “ an act to be done to preserve or prevent the loss 'of a civil right *428 or remedy ” within the meaning of those terms as employed in the aforesaid acts of 1862 and 1866; and therefore that Ralle, having failed to docket his judgment within the time prescribed by the statute, and conveyances having been made to the purchasers of the lands and admitted to record long before the docketing, the judgment constituted no lien on the lands conveyed.
Let us inquire for a moment into the origin, nature, and extent of the judgment lien. At common law, lands of the debtor could not be taken to satisfy his debts, except judgments due to the king, and judgments therefore did not operate as liens on land. But by the statute of Westm. 2, 13 Edw. 1, ch. 18, substantially adopted in this state, (1 R. Code, ch. 134, § 1, pp. 524, 525, 526, 527), a new execution was provided, the writ of elegit, by which a moiety of the lands of the debtor could be subjected to the satisfaction of the judgment.
The statute, however, did not in express terms give a lien on the land. It provided for the writ, and prescribed the form of it. By its terms, the officer was required to deliver to the creditor all the goods and chattels of the debtor, saving the oxen and beasts of his plough, and also a moiety of all his lands and tenements whereof the debtor at the day of obtaining his judgment was seized, or at any time afterwards, by reasonable price and extent, to have and to hold the said goods and chattels to the creditor as his own proper goods and chattels, and the said moiety as his freehold, to him and his assigns, until thereof the judgment be satisfied, (“until he shall have levied thereof the debt and damages aforesaid.”)
It was by the judicial construction given to this writ, that the judgment was said to be a lien on the *429 land. The lien resulted from the mandate of the writ to deliver to the creditor, by reasonable price and extent, a moiety of all the lands and tenements of the debtor, whereof he was seized at the date of the judgment or at any time afterwards. The lien was an incident of the writ and depended for its existence and continuance upon the capacity to sue out the writ. As long as this capacity lasted, even although revived after being temporarily suspended, the lien continued, and whenever it finally ceased, the lien which was dependent upon it was extinguished.
As the mandate of the writ extended to all the lands and tenements of which the debtor was seized at the date of the judgment, or at any time afterwards, it was by force of this mandate also that the lien of the judgment over-reached all subsequent conveyances, although made to purchasers for valuable consideration without notice of the judgment, and extended to all the lands of the debtor within the jurisdiction of the state.
In the interest and for the protection of such purchasers, the act of March 3, 1843, was passed, which provided for the docketing of judgments; and further, that “no judgment, decree, bond or recognizance-thereafter rendered, should bind the land of any party to the same against a bona fide purchaser for valuable consideration without notice, unless the same should be docketed in the county or corporation in which the-land lay, within twelve months after the rendition or forfeiture of such judgment, decree, bond, or recognizance, or ninety days before such land shall have been conveyed to such purchaser.”
Except as thus modified, in respect to purchasers,, by the act of 1843, the lien of the judgment continued the same, in all respects, as to its nature, extent, and the mode of enforcing it, until the general revision of *430 the laws in 1849. Up to that time,'as we have seen, it was a mere incident of the writ of elegit, resulting by construction from the mandate of the writ, and dependent for its existence and continuance on the capacity to sue out the writ.
It w^as now made for the first time, as to judgments thereafter to be rendered, an express, direct, positive, absolute lien on all the real estate of or to which the judgment debtor should be possessed or entitled, at or after the date of the judgment, or if it was rendered in court, at or after the commencement of the term at which it was so rendered, with the same qualification as to purchasers for valuable consideration without notice, as was made by the act of 1843. Code of 1860, ch. 186, §§ 6, 8.
The writ of elegit was preserved and made to conform to the statutory lien of the judgment, and an additional remedy in equity was given for the enforcement of the lien. Idem, § 9. '
The lien of the judgment being now express, positive, and in no way dependent on the elegit, and the remedy in equity being preferred in practice, the elegit ■soon fell into disuse, and was finally abolished by the legislature. Code of 1873, ch. 183, § 26, p. 1175.
It can hardly be said of such a lien as we have described, that it is nota “civil right” and one of a high ■order; seeing that it is, under the law as it stands, and by force of the law, a plain, direct, positive charge upon real estate. Having once attached, it continues, unless it is in some way discharged, as long as the real estate on which it rests remains the property of the .judgment debtor. It accompanies the land in its descent to the heirs, follows it into the possession of volunteers, and even into the hands of purchasers for value, if they have notice, or even if they do not have *431 notice, provided the judgment is docketed in the manner, and within the time prescribed by law.
It is a mistake to suppose that the 8th section of ch. ■ 186, of the Code of 1860, (amended in the Code of 1873, ch. 182, § 8,) was intended to create a lien against the purchaser by docketing the judgment. The lien is created by section 6, and attaches to all the real estate of the debtor, except so far as it is qualified by section 8. ■ The qualification is, that it shall not extend to real estate aliened after judgment to purchasers for value who have no notice of the judgment, unless the judgment be docketed in the manner and within the time prescribed. The implication is irresistible, that if so docketed it shall be a lien: that is, that the lien which was created by section 6 shall continue as to such purchasers.
Section 8 is substantially the same as section 4, of the act of 1843 before referred to, as may be seen by ■comparing the two sectious.
In the opinion of Judge Stanard, in Taylor’s adm’r v. Spindle, 2 Gratt. 44, 69, in which Cabell and Baldwin (Judges) concurred, discussing the nature and extent of the judgment, lien under the law as it then stood, and referring to the act of 1843, he said: “The late act of March, 1843, respecting the docketing of judgments, clearly evinces that in the opinion of the legislature, the lien of the judgment creditor operated from the date of the judgment, and continued thenceforward without qualification or impediment, while the creditor had or could get the capacity to issue the elegit on it, irrespective of intervening abatements, suspensions or delays; and that the judgments docketed according to that act, would in like manner, preserve the past, and continue the existing. lien indefinitely: that is, until from some supervening cause, it should be lost by the loss *432 of the rightful capacity to sue execution on the judgment.”
¥e have said enough, we think, to show that by a proper construction of the several statutes, the lien of a judgment attaches to and follows the lands of the debtor into the hands of a purchaser for value without, notice, and continues, provided the judgment is docketed; and if so docketed, that it is a lien from the date-of the judgment as against such a purchaser, in like-manner and with like effect, as against the debtor: and while the docketing of a judgment does not per se create a lien as against a purchaser for value without notice, yet it is an act necessary under our statutes to be done in order to preserve or prevent the loss of the lien as against such purchaser.
It follows, therefore, that, in our opinion, in computing the time within which a judgment is required by section 8, eh. 186, of the Code of 1860, to be docketed in order to preserve the lien of such judgment against purchasers, the period which elapsed between the 17th day of April 1861 and the 2nd day of March 1866 is. not to be computed as a part of such time, and therefore the judgment of Nalle, which appears to have been docketed on the 3rd day of November, 1865, has the same binding force against the alienees of Ross and Beckham in respect of the lands actually owned and aliened by the latter, as if no conveyances had been made by them.
We have dwelt longer on this branch of the case than we otherwise should have done, because the learned counsel for the appellant seemed to suppose, that in deciding the case of Hill & als. v. Rixey & als., supra, the court was not in that case fully possessed of all the views presented in argument in this.
*433 We proceed to consider the other questions presented by the assignment of errors.
These relate altogether to the “ Berry Hill ” tract of land conveyed by the executors of Mrs. Taylor to William B. Ross, one of the judgment debtors, and by Ross conveyed to the appellant Borst.
If John C. Thom was a competent witness, and his testimony was admissible to establish the facts which were intended to be proved by it, then beyond all dispute it is clear, that William B. Ross never at any time had any estate in this tract of land beyond the naked legal title, and that title he had for an instant only. He never had, even for an instant, the least beneficial interest in it. He was a mere conduit to pass the legal title to Borst the real owner. This being so, and the recording acts having no application to the case, there was nothing substantial to which the lien of Halle’s judgment could attach. Authorities without number might be cited to show, that where statutory enactments do not interfere, the creditor can never get by his judgment more than his debtor really owns, and to this he will be confined, as he should be, by courts of equity. In support of this proposition the following apposite authorities are cited by the appellant’s counsel. White v. Carpenter, 2 Paige R. 217, 238, 266-7; Kiersted v. Avery, 4 Paige R. 9; Buchan v. Sumner, 2 Barb. Ch. R. 165, 207; Lownsbury v. Purdy, 11 Barb. R. 490; Towsley v. McDonald, 32 Barb. R. 604; Sieman v. Austin, 33 Barb. R. 9; Sieman v. Schenck, 29 New York R. 598; Smith v. Gage, 41 Barb. R. 60, 71-75; Schlœper v. Corson, 52 Barb. R. 510; Robinson v. Robinson, 22 Iowa R. 427; Thomas v. Kennedy, 24 Iowa R. 397; Brown v. Pierce, 7 Wall. 205, 218; Baker v. Morton, 12 Wall. U. S. R. 150.
Was John C. Thom a competent witness? He was *434 one of the grantors in the deed to Ross.; but he conveyed as executor and with covenant of special warranty. He was not a party to the suit, and had no interest in the result of it, nor in the record as an instrument of evidence. He was, therefore, clearly a competent witness at common law. He was not disqualified by the statute. Code of 1873, §§ 21, 22. The object of that statute was to remove disqualification from witnesses, not to impose it.
It only remains to consider, whether parol evidence was admissible for the purpose of showing, that notwithstanding the land was conveyed to Ross, Borst was the real or beneficial owner of it.
The proof is clear and satisfactory, that the executors of Mrs. Taylor employed Ross as their agent to make sale of the land; that Ross, as such agent, made the sale to Borst; that Borst treated with Ross as agent only, and paid the purchase money to the executors; and after the payment of the purchase money was completed, the executors delivered to Ross the deed which had been sometime before prepared and acknowledged, by which the land was conveyed to Ross, and at. the same time Ross made and delivered a deed to Borst, conveying to him the same land. We are satisfied from the evidence, that the two deeds were delivered and admitted to record at the same time.
We are of opinion, that this proof establishes a trust, which by some text writers is denominated a resulting trust, and by others an implied trust. It matters not to which of these two classes of trusts it properly belongs, as both are founded on the presumed intention of the parties, both arise by operation of law upon the transactions of the parties, and the authorities generally concur, that both may be established by parol evidence.
*435 The evidence does not show any express agreement between Borst and Ross, that the latter should take the title to himself, but it does show conclusively that Borst paid the purchase money to Taylor’s executors before the latter delivered the previously prepared deed to Ross. If one pays the purchase money of an estate and takes the title deed in the name of another, in the absence of all evidence of intention, the law presumes a trust, from the natural equity that he who pays the money for the property ought to enjoy the beneficial interest. 1 Perry on Trusts, § 124. This presumption is stronger or weaker according to circumstances, and may be wholly rebutted. In this case it is greatly strengthened by the circumstances proved. Ho unfavorable deduction is to be drawn from the fact that the amount of Confederate money paid by Borst was larger than the sum received by Taylor’s executors: the difference in the sums expressed as the consideration in the two deeds was paid by Borst to Ross, and was doubtless composed of Ross’s commission for making the sale and the price of the two small parcels of land owned by Ross in his own right, and conveyed along with the “ Berry Hill” tract in the same deed to Borst. This latter circumstance may also account for Ross’s wife uniting in the deed. This was done, no doubt, to secure the relinquishment of her contingent dower interest in the two small parcels.
By sections 7 and 8 of the English Statute of Erauds, 29 Car. 2, ch. 8, all declarations or creations of trusts or confidences of lands are required to be manifested and proved by writing, except such as arise or result by the implication or construction of law. This statute in varied forms has been adopted in most, if not in all of the states of the union, and *436 in perhaps the greater number, sections 7 and 8 of‘ the English statute are in force; In Virginia, .however, these two sections form no part of our statute.. This fact is noticed and commented upon by the-judges in the case of Bank of United States v. Carrington & others, 7 Leigh 566, and the opinion is there strongly intimated, that direct or express trusts are not within the operation of the Virginia statute, and it was so expressly held by the special court of appeals in Walraven v. Lock & others, 2 Patt. & Heath. R. 547. notwithstanding, however, the decision in the last-named case and what was said by the judges in the former, this court in the very recent case of Sprinkle & als. v. Hayworth & als., 26 Gratt. 384, 392, considers the question as not settled. “We do not mean to admit, however,” says the president, delivering the opinion of the court, “that there is any difference in effect between the English statute and ours arising from the omission in the' latter of the seventh and eighth sections of the former. That is a question which is unnecessary and not intended to be discussed in this case.” It is alike unnecessary to be determined in the case now before us, and we express no opinion upon it. This case is disposed of under the rules and principles governing resulting and implied trusts, which, it is clear, may be established by parol evidence. Bank of United States v. Carrington & others, supra, and authorities there cited; Phelps v. Seely & als, 22 Gratt. 573.
Parol evidence was admissible in this case upon other grounds perhaps than those already stated, even if the case had been one of express trusts. The trusts here were fully executed by the parties-long before this litigation was commenced. They are not controverting, but on the contrary admit *437 them; and it would seem, that strangers, the creditors .of one of the parties, and others who do not claim in privity with the latter, should not be heard to make an objection to the nature of the evidence, which the parties themselves do not make. The doctrine of estoppel, as a general rule, applies only between parties and their privies, and as strangers are not bound by an estoppel, neither can they take advantage of it. Mauzy v. Sellars & als., 26 Gratt. 641.
The case of Sieman v. Austin, 33 Barb. R. 9, besides being otherwise interesting, is instructive on this point. A judgment creditor of Youngs, the apparent but not the real owner of lands, sought to subject the land to his judgment after Youngs had executed by •deed of conveyances to the real owner, the trust with which he had been invested by parol at the time of taking the title to himself; and one of the questions before the court was, whether the trust, which seems to have been an express one, being executed, parol evidence was admissible as against the judgment creditor, to show the true nature of the transaction and of the title. Mnoi, J., in his opinion, concurred in by one of the two remaining judges, said, “Now if the ■statute of frauds would have been in the way of the ■subjection of this property to the trust, if Youngs had never recognized or acted upon it, that was a defect in the evidence of the trust and not in the nature ■of the trust itself. The law refuses its aid to enforce •agreements creating trusts or charges upon lands, when they rest altogether in parol, not because the trusts are therefore void, but because it will not permit them to be proved by such evidence. But when ■a person who has received the title to lands purchased for the benefit of another, although without having •declared the fact in writing, recognizes and fulfils the *438 trust, it is not the duty of a court to deny its existence- * * * * * * Tlais is no fraud or injustice to- ' the creditors of Youngs, for the property never belonged to the debtor, nor did he obtain credit, mucin ■less incur this particular debt upon its possession. A debtor will not be permitted to convey away his property, either real or personal, and relieve it from incumbrances occasioned by his debts; but there is-nothing to prevent his restoring to others their property,* if it has been placed in his hands. Nor is there any reason why the property of others should be subject to the payment of his debts, if he is honest enough to refuse to avail himself of an opportunity to use it for that purpose. If it should be established, or-should be conceded, that the rules of law would have-defeated the enforcement of the rights of the plaintiff, in case Youngs had resisted and denied them, that question could not arise unless Youngs chose to avail' himself of it. When he has admitted and acted upon the trust, and conveyed the property to its true and equitable owner, it cannot be tolerated, that his creditors should question the title, or attempt to assert their-lien upon what was really never his.”
The conclusion we have reached in this case is not to any extent based on the deposition of the appellant. He was incompetent to testify in his own behalf. He was a party to the suit, directly interested in the result of it, and a party to the transaction, the subject of investigation, and William B. Ross, the other party to the transaction, was dead when the deposition was-, given. The circuit court of Culpeper did not err, ■therefore, in sustaining the exception to said deposition: but it did err in sustaining the exceptions-to the deposition of John C. Thom, in disregarding said deposition as evidence in the cause, and in hold *439 ing the “Berry Hill” tract of land conveyed to the appellant bound for the payment of the judgment of the appellee Halle. The amended and supplemented hill of the appellee Halle, so far as it seeks to subject to his judgment the “ Berry Hill ” tract of land should be dismissed, and the two small parcels of land, which was conveyed by Ross to the appellant being bound by said judgment, should be subjected to its payment before the lands conveyed to Botts and Stearns are resorted to for that purpose.
The appellant’s costs in this court should be paid by the appellees, Stearns and the parties claiming under John Minor Botts. The decree of the said circuit court must be reversed and a proper decree entered in conformity with this opinion.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the trans-script of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decree, is erroneous in sustaining the exceptions to the deposition of the witness John C. Thom, because of the alleged incompetency of said witness, and in not overruling said exceptions, and the other exceptions taken to the 3rd, 4th, 5th, and 6th questions and answers to the same in said deposition; and that said decree is further erroneous in holding the “Berry Hill” tract of land in the amended and supplemental bill of the cbmplainant Thomas ,B. Halle mentioned, liable to the lien of the judgment of the said Thomas B. Halle in said bill mentioned, and consequently further erroneous in ordering the accounts *440 directed by said decree so far as they relate to the said “Berry Hill” tract of land: it is therefore decreed ' and ordered, that the said decree, so far as hereinbefore declared erroneous, be reversed and annulled, and that the appellees Beverly B. Botts, Lunceford L. Lewis and Rose his wife, Daniel S. Lewis and Isabella his wife, B. W. Hoxie and Mary M. his wife, Franklin Stearns, and John F. Lewis, administrator of John Minor Botts, deceased, the said administrator out of the estate of his intestate in his hands to be administered, and the other said appellees out of their own proper estates respectively, do pay to the appellant his costs by him expended in the prosecution of his said appeal here. And this court, pronouncing such decree as the said circuit court ought to have pronounced, it is further decreed and ordered, that all of the exceptions taken to the deposition of the witness, John C. Thom, be overruled; and that the amended and supplemental bill of the complainant, Thomas B. Halle, so far as the same relates to the “Berry Hill” tract of land, conveyed by the executors of Lucy Lewis Taylor, deceased, to William B. Ross, and by the said Wm. B, Ross and wife conveyed to the appellant, and so far as said bill seeks to subject said “Berry Hill” tract to the judgment of the complainant in the bill mentioned, be dismissed; and that it be referred to one of the commissioners of the said circuit court to take an account of the two parcels of land said to contain 180 acres mentioned in the deed of conveyance from said Ross and wife to the appellant (a copy ■of which deed is filed as an exhibit in the cause,) and also of the lands in the complainant’s original bill mentioned, the same conveyed by James A. Beckham to John Minor Botts and Franklin Stearns; and of the fee simple and annual value of said several tracts *441 and parcels of land, and of the liens thereon and their priorities, if any, including the lien of the complainant’s said judgment, and make report to the said circuit court; and upon the coming in of said report, that the said two parcels of land of 130 acres conveyed as aforesaid, to the appellant, be first subjected to the payment of the complainant’s said judgment, and if they prove insufficient to satisfy said judgment, that the lands aforesaid conveyed to Botts and Stearns be subjected for the deficiency. And this cause is remanded to the said circuit court for further proceedings to be had therein in conformity with the opinion and principles herein expressed. Which is ordered to be certified to the said circuit court of the county of Culpeper.
Decree reversed.