*Richmond.*

LUCAS, SERGEANT, &C. v. CLAFFLIN & CO.

March 16, 1882.

1. FRAUDULENT CONVEYANCES.—To avoid a deed for fraud there must be a real design on the part of the debtor to prevent the application of his property, in whole or in part, to the satisfaction of his debts. He may satisfy or secure one debt in preference to another; and a creditor may take payment or security for his own debt, though he knows that thereby other creditors may lose their debts.

2. IDEM—*Preference.*—To prevent one creditor from acquiring preference by attachment or execution, debtor may pay or secure others, without imputation of fraud. The fact that part, or all of the debts secured, were already secured, does not of itself show fraud, provided the debtor does not divert or withhold his property from payment of his debts.

3. TAX ON DEEDS.—Code 1873, ch. 36, § 11, provides that "no deed shall be admitted to record until the tax is paid thereon." This is directory. Clerk may refuse to admit the deed to record until the tax is paid. But if he chooses to admit it without prepayment, he assumes the tax and the admission to record is valid. *Hill* v. *Rixey,* 26 Gratt. p. 80, distinguished from this case.

4. CASE HERE.—S, a merchant in A, conveyed in trust to secure thirteen debts, amounting to $4,100, and a fourteenth debt due to C & Co., a stock of goods worth $10,000. Afterwards C & Co. obtained judgment for $7,710.29, and caused *fi. fa.* to be levied on the goods, after executing indemnifying bond to the sergeant. One debt secured was for ground-rent of the store, another was for taxes, and others were also previously secured. Under the *fi. fa.* the goods were sold for less than the amount of the execution. Suit on the indemnifying bond was brought, and judgment was for C & Co., defendants. At the trial it was proved that trustee knew that "the deed was made to prevent C & Co. from coming in and getting all," and an instruction was given, on the motion of defendants, to which plaintiff excepted; which instruction, in substance, is as follows : "If from the evidence the jury shall believe that any of the debts secured by the deed of trust were already fully secured, and

that the deed was in no sense necessary to secure them, and was made to prevent the levy of C & Co.'s *fi. fa.*, the jury have a right to presume that the purpose of the grantor was to hinder, delay, or defraud C & Co. ; and if the trustee, or all the parties secured, knew the facts above stated, and also that the deed was made for the purpose of preventing the levy of C & Co.'s *fi. fa.* and acquiesced in such purpose, then they will find for the defendants."

HELD :

1. This instruction was erroneous in both clauses. It tells the jury that it is fair and reasonable to infer fraud from a certain state of facts, and consequently that they ought so to presume. Or it tells the jury to find for the defendants if they believe from the evidence a state of facts of which, of themselves, fraud could not be predicated. And at any rate it was calculated to mislead.

2. In such case as this, the court cannot say that, had this erroneous instruction not been given, the verdict would not have been different, and that therefore it ought to stand ; and it is only in a very plain case that an appellate court can so say.

Error to judgment of corporation court of Alexandria, rendered 23d April, 1878, in action of Robert T. Lucas, sergeant, &c. (for use of Wm. L. Allen, trustee), against Horace B. Clafflin, Edward C. Eames, Horace J. Fairchild, Wm. S. Dunn, Dexter N. Force, Daniel Robinson, and John Clafflin, partners under firm name of H. B. Clafflin & Co. ; Augustus D. Juillard, Gustavus Landsburg, James Landsburg, and H. O. Claughton. It was an action on an indemnifying bond, and verdict and judgment were for the defendants, and the plaintiffs obtained from one of the judges of this court a writ of error. Opinion of the court fully states the instruction given on motion of the defendants and excepted to by the plaintiffs, and all the facts of the case.

*S. Ferguson Beach,* for the appellant.

1. The verdict of the jury was determined by the instruction asked for by the defendants and given by the circuit court.

2. The instruction was erroneous. No evidence to show that the *c. q. ts.* knew of the purposes of the deed. Trustee only knew "it was to prevent Clafflin from coming in and taking all." One debt was secured as ground rent; another as taxes. Does it discredit the deed that one of its provisions should require trustee to do what the law would have required him to do without that provision? So the court said to the jury.

*H. O. Claughton,* for appellees.

1. It is the province of the court to instruct the jury as to what is fraudulent intent, and that certain evidence *has a tendency* to prove it. Bump on Fraudulent Conveyances, 26. The facts mentioned in the instruction had been proved, and the presumption of fraud from those facts was warrantable.

2. Conceding that the beneficiaries had no knowledge of these facts, the knowledge of them by the trustee was sufficient to avoid the deed. *State* v. *Benœst,* 37 Mo. 500; *Caldwell* v. *Rose,* 1 Smith (Ind.), 190; *Stewart* v. *Spencer,* 1 Curt. 157; *Caldwell* v. *Williams,* 1 Ind. 405; *Wickham and als.* v. *Lewis Martin & Co.,* 13 Gratt. 427; *Sipe* v. *Earman,* 26 Gratt. 563.

3. Grantor admitted that his intent was to prevent the levy of H. B. Clafflin & Co.'s execution, and to protect himself from loss, and these admissions show fraud.

4. None of the beneficiaries accepted the deed. Acceptance of an assignment made with fraudulent intent cannot be presumed. *Baldwin* v. *Peet,* 27 Texas, 708; *Townshend* v. *Howell,* 18 Ala. 301; 23 Ala. 80.

5. If the instruction had been erroneous, the jury would, from the evidence, have been obliged to render the same verdict, even had it not been given, and so the judgment should stand.

6. Tax on the deed was not paid before its admission to record as the statute requires, and the deed is void on that account. *Hill* v. *Rixey*, 26 Gratt. 72.

ANDERSON, J., delivered the opinion of the court.

James M. Stewart, a merchant of the city of Alexandria, Virginia, was sued in the corporation court of said city by H. B. Clafflin & Co., creditors of said Stewart. Judgment was rendered against him, and an execution of *fieri facias* sued out thereon, amounting to $7,710.29, including the costs attending it, which was levied upon property inventoried and described in a schedule marked A. The said property, consisting of the entire stock of dry goods and store furniture of said Stewart, except what he had set apart for his homestead, had been conveyed by him pending the suit, and before judgment, to William L. Allen, in trust for the following uses and purposes—to wit: To convert the said stock of dry goods into cash, either by public or private sale, as in his judgment may be best adapted to the purpose, as expeditiously as possible, without unreasonably sacrificing the same, and to apply the money thus realized, after payment of his commissions and expenses, to the payment of the debts of said Stewart therein enumerated in the order enumerated. Fourteen debts are enumerated, including the debt of Clafflin & Co., for which they afterwards obtained judgment as aforesaid, which is put last and numbered fourteenth.

The debts which were given the preference to Clafflin & Co.'s are shown to have amounted to about $4,100, and the stock of goods put at cost, and some of them below cost, amounted to $15,000, and if they had been sold by the trustee under the deed, in the opinion of witnesses, would have brought from eleven to twelve thousand dollars.

The seizure and sale of the said property, under said execution of Clafflin & Co., were forbidden by Allen, trustee; and the said Clafflin & Co. executed to the sergeant an indemnifying bond, pursuant to the act of assembly, and caused the property to be sold under their execution, which did not bring enough to satisfy the execution; and this suit was brought, in the name of the sergeant, for the use of Allen, trustee, on the indemnifying bond.

In the progress of the trial, the court instructed the jury that if they "believed from the evidence that any of the debts secured by the deed from Stewart to Allen were already fully secured, and that the said deed was in no sense necessary for the purpose of securing them, and was made to prevent the levy of H. B. Clafflin & Co.'s execution, the jury have the right to presume that the purpose of the grantor in making the said deed was to hinder, delay, or defraud H. B. Clafflin & Co.; and if the trustee or all the parties secured had knowledge of the facts above stated, and also that the deed was made for the purpose of preventing the levy of H. B. Clafflin & Co.'s execution, and consented to or acquiesced in such purpose, then they will find for the defendant." To the giving of this instruction the plaintiff, by his counsel, excepted, and it is the only assignment made by the plaintiff in error, who was plaintiff below.

1st. Had the jury a right to presume upon the hypothesis in the first clause of the instruction, that the purpose of the grantor was to hinder, delay, or defraud H. B. Clafflin & Co.?

And 2d, was it right to tell the jury, as in the second clause of the instruction, that they must find for the defendant upon the hypothesis, if they believed it to be true, that the trustee or all the secured creditors had knowledge of the facts, as thereinbefore stated, and that the deed was made for the purpose of preventing the levy

of Clafflin & Co.'s execution? We will pursue these two inquiries in their order.

The first postulate is, that if *any* of the debts secured by the deed of trust were already fully secured, and the said deed was in no sense necessary to secure it, and was made to prevent the levy of H. B. Clafflin & Co.'s execution, the jury had a right to presume (which is equivalent to saying *should* presume) that the deed was fraudulent.

When the court tells the jury that they have a right to presume fraud from a certain state of facts, it implies that, in the opinion of the court, such presumption is fair and reasonable, and consequently that the jury *ought* so to presume, and I think it would be so understood by the jury. At any rate, if it could not be so construed, it was calculated to mislead the jury.

The ground rent upon the lot on which the store was situated was evidently well secured, independent of the deed of trust. It was, by operation of law, a primary charge upon the stock of goods, and, of course, the deed was not necessary for its security; and it is given priority over all other debts by the deed.

The second debt secured by the deed of trust consisted of taxes due the city corporation, which was also a legal charge upon the stock of goods. Both of these debts were entitled in law to priority over all the other debts secured by the deed of trust, and were given priority by the deed. They would have had priority over Clafflin & Co.'s execution if no deed had been made.

There are other debts provided for by the deed, which, it seems, were already secured to some extent; it is uncertain whether they were fully secured or not. About $1,700 of the debts, besides Clafflin & Co.'s debt, it seems, were, independent of the deed of trust, wholly unsecured.

The law gave priority to debts Nos. 1 and 2, secured by the deed of trust, and the grantor, in requiring the trustee

to pay them out of the first monies that came into his hands from the sales of the goods, only gave them the priority which the law gave them. He only complied with the requirements of the law. He conveyed the property upon which the rents and taxes were, by the law, a primary charge, to a trustee to secure and satisfy them and other debts in the order in which they were enumerated, a portion of which were not otherwise secured, and a portion of which were already either wholly or partly secured. In conveying the property to secure other debts, if he had made no provision for the payment of those, which were a prior charge upon it by operation of law, it would have had the look of an attempt to screen his property from its legal liabilities, and been regarded as a badge of fraud. It would have been a fraud upon his landlord and the city council.

But the first clause of the instruction requires the jury to presume, if they believe that either of those debts were fully secured, and that the deed of trust was in no sense necessary to secure it, that the deed was made with fraudulent intent as to H. B. Clafflin & Co., provided they also believed from the evidence that the deed was made to prevent the levy of their execution.

The mere fact that a conveyance was made by a debtor of his property to some of his *bona fide* creditors, whom he chose to prefer, to prevent another creditor, although equally meritorious, who had a suit pending against him, from levying an execution upon it, after he had obtained a judgment, and taking the whole of it, is not a fact of which fraud can be predicated. The right to make such conveyance is a necessary corollary, from the right of a debtor to prefer one creditor over another.

In Kerr on Frauds, p. 212, it is said: "The law tolerates assignments, giving one creditor a preference over another. The fact that an assignment may have been expressly

made with the intent to defeat the claim of a particular creditor, is of no consequence, either at common law or under the statute of Elizabeth, if the consideration be adequate."

In *W. & S. Banking Company* v. *Marston*, 7 Hurlstone & Norman's R. p. 148, Pollock, C. B., cites approvingly *Pickstock* v. *Lyster*, 3 M. & Sel. 371, where a debtor, being sued by one of his creditors pending the suit and before execution, assigned all his effects to trustees for the benefit of all his creditors, under which possession was immediately taken (which is this case), it was held that the assignment was not fraudulent within the 13th Elizabeth, c. 5. And this seems to be now settled law in England. See *Darvill* v. *Terry*, 6 Hurlstone & Norman's R. p. 810 ; *Wood* v. *Dixie*, 7 Q. B. 892 (E. C. L. R. 53); *Holbird* v. *Anderson*, (5) T. R. 235, Law Journal of 1859, vol. 28, p. 779 ; *Hale* v. *The Metropolitan Saloon Omnibus Company*, by Kindersly, V. C.

The almost unbroken current of American decisions is concurrent with the English. Bump on Fraudulent Conveyances (p. 220) maintains that a preference may be given and received for the express purpose of defeating an execution. For (says he) the mere intent to defeat an execution does not of itself constitute fraud. The payment of a just debt is what the law admits to be rightful, and is, therefore not fraudulent, either in law or in fact.  *  *  * This is not delaying or hindering within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority."

In *Waterbury* v. *Sturtevant*, 18 Wend. R. p. 353, it was held that a debtor has an unquestionable right to prefer one creditor or set of creditors to another. In that case, two days after a verdict against the debtor for $5,000, but before judgment, he sold and conveyed his real estate to his father, in satisfaction of a *bona fide* debt he owed him. It was held by a majority of the court that if the debt of the

father was *bona fide,* and the real estate was conveyed at its fair value, although the grantor intended to prevent the lien of the anticipated judgment, and to give his father a preference as a creditor, the conveyance was valid..

It was held by the supreme court of California, Field, J., now a distinguished justice of the supreme court of the United States, delivering the opinion, that "it would be unreasonable to deny on the one hand the right to give a preference by voluntary payment or security, and to allow, on the other, such process to be acquired by compulsory process of attachment or execution. A conveyance giving such preference is not fraudulent, though the debtor be insolvent, and the creditor be aware, at the time, that it will have the effect of defeating the collection of other debts. *Dana* v. *Stanfords & Deitz,* 10 Cal. R. p. 277. See *Weller* v. *Wayland,* 17 Johns. p. 104; 10 Cal. R. 277, and 19 same, 46; *Ford* v. *Williams,* 3 B. Monroe, 556; *Anderson* v. *Rockhill & Co.,* 4 B. Monroe, 296. Cases might be greatly multiplied to show that this doctrine prevails generally in the American States. We will refer only to one other, a case recently decided by this court: *Williams and als.* v. *Lord & Robinson and als.,* decided at the March term, 1881, Judge Burks delivering the opinion (1 Matthews, 390). The court held that the insolvency of the grantor and the pendency of suits at the time the deed was executed "were not entitled to much weight in determining the question of fraud." "It is the common case (says the court), and as a debtor has a right to pay one creditor in preference to another, so he may, without the imputation of fraud, secure one creditor to prevent another from getting an advantage," citing *Skipwith's Ex'or* v. *Cunningham and others,* 8 Leigh, 271, and *Sipe* v. *Earman,* 26 Gratt. 563.

If the debtor has conveyed his property to satisfy debts, all of which, except the debt for which judgment was afterwards obtained, were already fully secured, we are not

prepared to say the jury would have been warranted in presuming from those facts alone that the conveyance was made with intent to defraud the execution creditor. It would be proper for the jury to consider them in connection with the other facts and circumstances proved on the question of fraudulent intent. The property conveyed was the debtor's own property, and he had a right to convey it as he thought proper, so that it was applied to the payment of his honest debts, and not diverted or withheld therefrom. There can be no good reason why he may not discharge the debt with other property or money, and release the property with which it is already charged, which would be liable to satisfy his creditor's judgment.

In *Wheaton* v. *Neville*, 19 Cal. 46, the court say, Field, C. J., delivering the opinion: "To avoid the conveyance, there must be a real design on part of the debtor to prevent the application of his property, in whole or in part, to the satisfaction of his debts. A creditor violates no rule of law when he takes payment or security for his demand, though others are deprived thereby of all means of obtaining satisfaction of their own equally meritorious claims." The same court had previously held, 10 Cal. *supra*, that "from the very power which a man possesses over his own property, it follows that he can dispose of it in any manner he may see fit, which does not contravene the general policy of the law. That policy restricts the power of disposition, so as to prevent the withdrawal of the property from the claims of his creditors. It is no part of such policy to inhibit its application to the payment of one debt rather than another. Bump says, "A creditor does not violate any principle of the statute when he takes payment or security for his demand, though others are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims, and though he may be aware of the intent of the debtor to defeat the collection

of them. Fraud, in its legal sense, cannot be predicated of such a transaction. Whenever there is a true debt and a real transfer, there is no collusion." *Supra.*

A debtor having the right to secure or pay one creditor in preference to another, and having the right to dispose of his property as he may see fit, provided that he does not dispose of it in a way to prevent its application to the payment of his *bona fide* debts, it is difficult to perceive upon what principle he may not convey it to satisfy a debt which he had already secured by a charge on other property, as he does not thereby withhold any of his property from the payment of his debts; inasmuch as to the extent to which his property so conveyed is applied to the payment of those debts, the other property upon which they were a charge will thereby be released, and be liable to the payment of his other debts.

However that may be, it is very clear that the first clause of the instruction is erroneous, which is to the effect that the jury should presume that the purpose of the grantor in making said deed was to hinder, delay or defraud H. B. Clafflin & Co., if they believe from the evidence that *any* of the debts secured by said deed were already fully secured, and that it was made to prevent the levy of H. B. Clafflin & Co.'s execution.

Now, as to the latter clause of the instruction given. It seems to be in effect, that if the trustee, or all the parties secured, had knowledge that *any* of the debts secured by the deed were already fully secured, &c., and that the deed was made for the purpose of preventing the levy of H. B. Clafflin & Co.'s execution, and consented to or acquiesed in such purpose, the jury should find for the defendant. The instruction is not predicated of a finding by the jury that the deed was fraudulent as to the grantor. The jury are told that if they believe that the trustee or the creditors had knowledge that *any* of the creditors secured by it were

already fully secured, and that the deed was made to prevent the levy of Clafflin & Co.'s execution, and consented to and acquiesced in such purpose, they should find for the defendant. There is no predicate of a fraudulent intent of the grantor. That is not made necessary to their finding for the defendant. The jury had no warrant to find for the defendant unless the grantor had made the deed with a fraudulent intent; and not then unless the grantees had knowledge of or participated in the fraud.

We do not believe that the judge who presided at the trial, and gave the instruction, intended that it should be so understood. Yet we think that it bears that construction, and may have been so understood by the jury. The instruction seems to have been given upon the erroneous idea that it had been determined that the conveyance was made by the grantor with a fraudulent intent, and that the only remaining question was as to the grantees, whether they should be held to have participated in it.

If the instruction had been predicated of the fraudulent intent of the grantor, to the following effect: "If the jury believe from the evidence that the deed was made by the grantor with intent to defraud Clafflin & Co., and that the trustee or the creditors had knowledge, &c., they should find for the defendant," the objections we have *indicated* to the instruction given would have been obviated; but if it had been so given, it is obvious from what has been said that in the opinion of this court it would have been erroneous. For if the facts of which it was predicated would not warrant the imputation of fraud against the grantor, the knowledge of them by the grantees could not implicate them with fraud.

The appellate court will rarely undertake to say that the verdict of the jury would not have been different if the erroneous instruction had not been given, and that therefore, although the instruction given the jury is held to be

erroneous, the verdict and judgment ought to stand. It would not, except in a very plain case.

If it plainly appeared from the record in this case, as argued by the learned counsel for defendants, that the deed of trust under which the plaintiff claims the property which was levied on and sold under Clafflin & Co.'s execution was void as to creditors because it was not recorded, then it would be plain that the plaintiff was not prejudiced by the erroneous instruction, and that the verdict and judgment must have been the same if it had not been given; and that although the instruction was erroneous, the verdict of the jury and judgment of the court were right.

It is contended by the learned counsel that the tax upon the deed was not prepaid to the clerk, as the statute requires, before the deed could be recorded, and that consequently the deed is void as to creditors.

It is provided by statute, Code of 1873, p. 352, § 15, that no clerk shall issue any writ, or docket any motion, writ of error, *supersedeas* or appeal, or record any deed or will, or grant any letters or certificate of administration, until the tax thereon shall be paid. And on p. 365, § 11, it is provided that "no deed shall be admitted to record until the tax is paid thereon to the clerk." The clerk is liable for the tax if he records the deed. The law is directory to him, and gives him authority to demand and receive the tax before he can be required to admit the deed to record. If he chooses to admit it to record without receiving prepayment of the tax, he thereby assumes the liability for it, just as if it had actually been paid to him. The government loses nothing, for his liability for it is the same as if he had actually received it, so that it is only a question with him whether he will waive the actual prepayment, and trust the party who is chargeable with it, and assume liability for it himself, just as if he had actually received it. If he admits the deed to record without pre-

payment of the tax, and thereby becomes liable for it just as if he had received it, the recordation does not thereby become void. The statute does not so declare, and there is no reason why it should be.

It appears that in this case the deed was actually admitted to record on the day of its date, and the presumption is that the tax was paid. It was paid so far as the government was concerned to whom it was due, because the clerk was responsible for it just as if it had been paid. And really it does not appear that it was not actually paid. It only appears that it was not paid by the *trustee*.

This case differs materially from *Hill and als.* v. *Rixey, Starke and als.*, 26 Gratt. 80, relied on by defendants' counsel. Indeed, the question decided in that case does not arise in this. The deed in that case was delivered to the clerk on the 8th of Dec'r, 1865, and was not recorded until the 6th of Nov'r, 1867, and the question was whether it could be regarded as admitted to record on the day of its delivery to the clerk, and we held that because the stamp was not affixed to it, nor the tax nor registration fees paid, the clerk was not under an obligation to admit it to record. But it was not held in that case, nor in any other, that if it had been admitted to record, that the recordation was not valid for want of proof of actual prepayment of the tax to the clerk—a very different question from that which was decided. It does not appear that the verdict of the jury for the defendants was upon this ground, which we think is wholly insufficient to sustain it, and that the verdict was consistent with and obedient to the instruction which we hold to be erroneous, the judgment will have to be reversed, the verdict set aside, and a new trial awarded the plaintiff, and the cause sent back; and it consequently would not be proper for the court now to comment upon the evidence, or to pass upon the allegations of fraud,

which may be subjects of inquiry upon the new trial to be had of the cause.

Judge Staples said he was not prepared to concur in so much of the opinion of Judge Anderson as holds that under the instruction of the court the jury were bound to presume the fraudulent intent from the facts stated. The court intended to leave the inference to the discretion of the jury.

JUDGMENT REVERSED AND CAUSE REMANDED.